17

FILED

JUN 2 5 2010

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 09-13200-B-7 |
| Wade Alan Hanson and Gail Judith Hanson, | |
| Debtors. | |
| Charles Claborn, Steve Espinoza, Helen Gardner and Riverpark Associates, LLC, | Adversary Proc. No. 09-1139 |
| | DC No. HAR-1 |
| Plaintiffs, | |
| v. | |
| Wade Alan Hanson, | |
| Defendant. | |

**MEMORANDUM DECISION REGARDING MOTION
FOR SUMMARY JUDGMENT**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Victoria Bernhardt, Esq., of McCormick, Barstow, Sheppard, Wayte & Carruth, LLP, appeared on behalf of the plaintiffs, Charles Claborn, Steve Espinoza, Helen Gardner and Riverpark Associates, LLC (the "Plaintiffs").

Justin D. Harris, Esq., of Motschiedler, Michaelides & Wishon, LLP, appeared on behalf of the defendant/debtor, Wade Alan Hanson ("Hanson").

Before the court is an adversary proceeding to determine the dischargeability of a state court judgment entered prior to commencement of the bankruptcy case against Hanson. The judgment was entered after a five-day arbitration proceeding

1   which concluded in June 2008 (the "Arbitration Proceeding"). The arbitrator's

2   statement of decision with findings of fact and conclusions of law was set forth in a

3   21-page interim arbitration award followed by a six-page final arbitration award in

4   September 2008 (the "Arbitration Award"). In December 2008, the state court

5   entered the judgment based on the Arbitration Award. Hanson commenced this

6   bankruptcy under chapter 7 in April 2009. The Plaintiffs ask this court to give

7   collateral estoppel effect to the factual findings and legal conclusions that were

8   decided in the Arbitration Proceeding and based thereon, have moved for summary

9   judgment in this adversary proceeding (the "Motion"). For the reasons set forth

10  below, the Motion will be granted.

11      This memorandum decision contains the court's findings of fact and

12  conclusions of law required by Federal Rule of Civil Procedure 52(a), made

13  applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure

14  7052. The court has jurisdiction over this matter pursuant to 28 U.S.C. §1334 and

15  11 U.S.C. §523.[1] This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

16  **Background.**

17      The background of this case can be summarized from the Arbitration Award,

18  from the record of this bankruptcy proceeding, and from the undisputed factual

19  allegations pled in this adversary proceeding.

20      In 2004, Plaintiffs Charles Claborn ("Claborn"), Steve Espinoza

21  ("Espinoza"), and Helen Gardner ("Gardner") joined Hanson to form Riverpark

22  Associates, LLC (the "LLC"). The purpose of the LLC was to acquire and develop

23  a parcel of commercial property located on Colonial Avenue in Fresno, California

24

25      [1]Unless otherwise indicated, all chapter, section and rule references are to the
    Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy
26  Procedure, Rules 1001-9036, as enacted and promulgated on or *after* October 17, 2005, the
    effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005,
27  Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

28

1   (the "Colonial Property"). Pursuant to the LLC's operating agreement, Hanson was
2   named to serve as the managing member of the LLC.
3          At the time, Hanson owned and operated a business known as Lifestyle
4   Mortgage, Inc., doing business as Bankers First Mortgage ("BFM"). After
5   formation of the LLC, Hanson on behalf of the LLC, contracted with Claborn to
6   construct the internal tenant improvements and prepare the Colonial Property for
7   occupancy. Once the Colonial Property was ready, Hanson moved BFM into the
8   Property. BFM was the LLC's primary tenant, occupying approximately 72% of the
9   space in the Colonial Property. However, Hanson refused to sign a lease with the
10  LLC and failed to pay any rent for the space occupied by BFM.
11         In April 2007, the Plaintiffs filed an action in the state court in an attempt,
12  *inter alia*, to evict BFM from the Colonial Property. Claborn asserted personal
13  claims against Hanson based on his contract to perform work on the Colonial
14  Property ("the Claborn Claims"). The remainder of the claims was asserted against
15  Hanson on behalf of the LLC ("the Derivative Claims"). Hanson opposed the
16  litigation and used his position as managing member of LLC to frustrate and defeat
17  the eviction proceeding. BFM finally moved out of the Colonial Property in
18  February 2008.
19         During May and June 2008, the parties engaged in the Arbitration Proceeding
20  wherein witnesses were called and evidence was presented. Both Hanson and
21  Claborn were represented by counsel. Hanson finally resigned as managing member
22  of the LLC on May 14, 2008. On the same date, the LLC, on motion of Claborn,
23  Espinoza, and Gardner, was added as a nominal respondent in the Arbitration
24  Proceeding for the purpose of the Plaintiffs' Derivative Claims. On July 7, 2008,
25  the Arbitrator issued an interim arbitration award. The final Arbitration Award was
26  rendered on September 12, 2008. On December 11, 2008, the Arbitration Award
27  was confirmed by the Fresno County Superior Court (the "Judgment").
28  / / /

3

**The Claborn Judgment.**

At the conclusion of the Arbitration Proceeding, Hanson was determined to be personally liable to Claborn based on the Claborn Claims for intentional misrepresentation and intentional breach of fiduciary duty. The Judgment included an award in favor of Claborn in the total amount of $27,203.03, with interest at 10% per annum from December 11, 2008 (the "Claborn Judgment").

**The LLC Judgment.**

Hanson was also determined to be liable to the LLC based on the Derivative Claims for intentional breach of his fiduciary duty relating to BFM's occupancy of the Colonial Property. In addition, Hanson was found liable for damages due to conversion of the LLC's funds, intentional breach of fiduciary duties, and misuse of the LLC's funds to purchase furniture and to pay for tenant improvements. It was also determined that Hanson intentionally breached fiduciary duties owing to the LLC by using its funds to pay Hanson's share of the real property taxes due on another property Hanson owned known as the Pitt property. The Judgment included an award in favor of the LLC and against Hanson in the total amount of $368,809.58, to bear interest at the rate of 10% per annum from December 11, 2008 (the "LLC Judgment").

Punitive damages were assessed against Hanson in favor of the LLC in the amount of $125,000. The Arbitrator made findings that Hanson engaged in numerous and continuing breaches of fiduciary duty owed to the LLC. Hanson admitted knowing that (1) he owed a fiduciary duty to the LLC and its members, (2) he was prohibited from acting to the detriment of the LLC and its members, and (3) it would be a breach of fiduciary duty to use LLC money to benefit himself or to benefit his solely owned corporation, BFM. The Arbitrator found by clear and convincing evidence that Hanson intentionally breached his fiduciary duties to the LLC and intentionally converted LLC monies to his personal benefit as well as to the benefit of BFM. In awarding punitive damages under Cal.CodeCiv.P.

4

3294(c)(1), the Arbitrator found that Hanson acted with malice involving despicable conduct with a willful and conscience disregard of the rights of others. The Arbitrator awarded punitive damages after considering evidence relating to Hanson's personal financial condition.

**The Attorneys' Fees and Costs.**

Finally, the Judgment included an award in favor of Claborn, Espinoza, and Gardner, for attorneys' fees, recoverable costs, and arbitrator's fees, in the amount of $85,036.69, to bear interest at the rate of 10% per annum from December 11, 2008.

**Hanson's Defense in the Arbitration Proceeding.**

By stipulation of the parties, Hanson's capital contribution to the LLC was determined to be $150,000 and his ownership interest in the LLC was determined to be 28%. The Arbitrator determined that Hanson had a claim against the LLC in the amount of $51,652.74 for monies advanced by Hanson to the LLC. However, Hanson did not file a counterclaim in the state court proceedings for affirmative relief. Hanson did assert this claim as a defense or offset to the Derivative Claims. The Arbitrator decided that an offset of Hanson's claims against the LLC was not appropriate because Hanson's advances to the LLC were not currently recoverable under the terms of the LLC's operating agreement. The Arbitrator declined, without prejudice, to issue an order to dissolve the LLC.

**Issues Presented.**

The Plaintiffs already have the Judgment against Hanson, supported by the Arbitration Award, for compensatory and punitive damages. That Judgment was not appealed and is now final. The Plaintiffs are not asking this court to enter a new judgment for damages against Hanson. Their claims are already liquidated. The Plaintiffs are only asking this court to rule that Hanson's bankruptcy does not discharge the existing Judgment. Whatever rights Hanson may have to seek modification of, or relief from, the Judgment under California law will be preserved

1  and will not be affected by this court's determination regarding the dischargeability

2  of that Judgment.

3       This court has only two issues to decide: whether the facts and legal

4  conclusions specified in the Arbitration Award are entitled to collateral estoppel,

5  and whether those facts and conclusions of law support the legal conclusion that all

6  or some part of the Judgment is nondischargeable in this bankruptcy proceeding.

7  **A. Applicable Law.**

8       **1. Summary Judgment Standard.**

9       The Plaintiffs ask this court to rule in their favor by summary judgment, *i.e.*,

10  without a full trial on the issues which will determine the dischargeability of their

11  Judgment. Summary judgment is appropriate, "if the pleadings, depositions,

12  answers to interrogatories, and admissions on file, together with the affidavits, if

13  any, show that there is no genuine issue as to any material fact and that the moving

14  party is entitled to a judgment as a matter of law." (Fed.R.Civ.P. 56(c) (made

15  applicable in this adversary proceeding by Fed.R.Bankr.P. 7056)).

16       A material fact is one that might affect the outcome of the suit under the

17  governing law and irrelevant or unnecessary factual disputes will not be considered

18  in a motion for summary judgment. *Anderson, et al. v. Liberty Lobby, Inc., et al.*,

19  477 U.S. 242, 248, 106 S.Ct. 2505 (1986).

20       The moving party bears the burden of showing that there is no genuine

21  dispute as to each issue of material fact. *Celotex Corporation v. Catrett*, 477 U.S.

22  317, 325, 106 S.Ct. 2548, 2554 (1986). However, the party adverse to a motion for

23  summary judgment cannot simply deny the pleadings of the movant; the adverse

24  party must designate "specific facts showing that there is a genuine issue for trial."

25  Fed.R.Civ.P. 56(e). More precisely, "[i]t is not enough that the nonmoving party

26  point to disputed facts; rather, they must make a sufficient showing to establish the

27  existence of a triable issue of material fact as to an element essential to the moving

28  party's case." *In re Powerburst Corporation*, 154 B.R. 307, 309-310

6

1    (Bankr.E.D.Cal. 1993), citing *Lake Nacimiento Ranch v. San Luis Obispo County*,

2    830 F.2d 977, 979-980 (9th Cir.1987), cert. denied 488 U.S. 827, 109 S.Ct. 79, 102

3    L.Ed.2d 55 (1988).

4                    **2. Application of Collateral Estoppel.**

5            The Plaintiffs contend that summary judgment is appropriate here because all

6    of the material facts and conclusions of law relevant to this adversary proceeding,

7    *i.e.*, relevant to the dischargeability issues, have been necessarily and actually

8    litigated in the Arbitration Proceeding.  In support of that, the Plaintiffs have filed

9    with this court copies of both the Arbitration Award and the Judgment.  The

10   Plaintiffs ask this court to apply the doctrine of collateral estoppel to each fact and

11   conclusion of law set forth in the Arbitration Award.  If collateral estoppel applies,

12   then it is not necessary for the Plaintiffs to relitigate those facts and legal issues in

13   the bankruptcy court.

14           Resolution of this dispute begins with an analysis of the rulings and

15   determinations recited in the Arbitration Award. This court must decide, based on

16   that record, whether the Arbitrator has already conclusively decided each material

17   fact and legal issue required to prove the Plaintiffs' claims in this adversary

18   proceeding.  Under the federal Full Faith and Credit statute, federal courts must give

19   state court judgments the same preclusive effect that those judgments would receive

20   from another court of the same state.  28 U.S.C. § 1738.  The bankruptcy court has

21   original jurisdiction to hear the dischargeability complaint, but it is not a court of

22   appeal for issues that have already been decided in the Arbitration Proceeding.

23           Collateral estoppel, or issue preclusion, prevents parties from relitigating an

24   issue of fact or law if the same issue has already been determined in prior litigation.

25   *See R.T.C. v. Keating*, 186 F.3d 1110, 1114 (9th Cir. 1999).  "Mutual" collateral

26   estoppel involves subsequent litigation between the same parties or their privies.  It

27   has the "dual purpose of protecting litigants from the burden of relitigating an

28   identical issue with the same party or his privy and of promoting judicial economy

                                    7

by preventing needless litigation." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326 (1979). Collateral estoppel applies in bankruptcy dischargeability proceedings. *See Grogan v. Garner*, 498 U.S. 279, 284 & n.11 (1991).

California law determines the preclusive effect which this court must give to the Arbitration Award. California courts will apply collateral estoppel only if certain threshold requirements have been met, and then only if application of issue preclusion furthers the public policies underlying the doctrine. *Harmon v. Kobrin (In re Harmon)*, 250 F.3d 1240, 1245 (9th Cir. 2001), citing *Lucido v. Superior. Ct.*, 51 Cal.3d 335, 341, 272 Cal. Rptr. 767 (1990). The public policies underlying collateral estoppel are (1) the preservation of the integrity of the judicial system, (2) promotion of judicial economy, and (3) the protection of litigants from harassment by vexatious litigation. *Lucido*, 51 Cal.3d at 343.

There are five threshold requirements which must be established before collateral estoppel of any issue will apply:

> First, the issue sought to be precluded from relitigation must be *identical* to that decided in a former proceeding.
>
> Second, this issue must have been *actually litigated* in the former proceeding.
>
> Third, it must have been *necessarily decided* in the former proceeding.
>
> Fourth, the decision in the former proceeding must be *final and on the merits*.
>
> Finally, the party against whom preclusion is sought must be the *same [party]* as, or in privity with, the party to the former proceeding.

*Id.* at 341 (emphasis added and citations omitted).

Here, there is no dispute concerning the application of collateral estoppel to any of the issues resolved in the Arbitration Award. The issues pertinent to the dischargeability determination have been adjudicated in the Arbitration Proceeding. The Plaintiffs and Hanson were the same adverse parties in the prior Arbitration Proceeding and the Judgment is final on the merits because Hanson did not appeal it. The second and third requirements for collateral estoppel are interrelated. The

second requirement, the "actually litigated" element, applies, even in the context of a default judgment, where the record shows an express finding upon the allegation for which issue preclusion is sought. *Cal-Micro, Inc. v. Cantrell (In re Cantrell)*, 329 F.3d 1119, 1124 (9th Cir. 2003), citing *Williams v. Williams (In re Williams' Estate)*, 36 Cal. 2d, 289, 297 (1950). However, the "express finding" requirement can be waived if the court in the prior proceeding necessarily decided the issue. *Cantrell*, 329 F.3d at 1124, citing *In re Harmon*, 250 F.3d at 1248. In such circumstances, an express finding is not required "if an issue was necessarily decided in a prior proceeding, it was actually litigated." *Id.*

Hanson offers no evidence in this proceeding to suggest that any of the separate determinations and rulings in the Arbitration Award were not actually and necessarily litigated. Further, there is no dispute that Hanson had a full and fair opportunity to litigate his defense of the Plaintiffs' claims, and any counterclaims he may have had against the Plaintiffs in the Arbitration Proceeding.

## B. Elements of Plaintiffs' Claims for Relief.

The plaintiffs seek alternative relief under § 523(a)(2)(a) (false pretenses or actual fraud), § 523(a)(4) (fraud or defalcation while acting in a fiduciary capacity), and § 523(a)(6) (willful and malicious injury). The plaintiffs need only satisfy the elements of one of their claims in order to receive the relief prayed for.

### 1. Section 523(a)(4): Fraud or Defalcation While Acting as a Fiduciary.

The Plaintiffs contend that Hanson committed fraud or defalcation while acting as a fiduciary. If the Plaintiffs can make that showing, then their Judgment against Hanson based on that conduct will be nondischargeable under § 523(a)(4). To prevail, the Plaintiffs must show the existence of a fiduciary relationship and that the debt is attributable to wrongful conduct in connection with that relationship. "A debt is nondischargeable under 11 U.S.C. § 523(a)(4) where '1) an express trust existed, 2) the debt was caused by fraud or defalcation, and 3) the debtor acted as a fiduciary to the creditor at the same time the debt was created.'" *Otto v. Niles (In re*

9

1    *Niles)*, 106 F.3d 1456, 1459 (9th Cir. 1997).

2         An action under § 523(a)(4) requires an express or statutory trust relationship

3    between the parties. For example, in *In re Niles*, 106 F.3d 1456, debtor Niles, a real

4    estate agent, managed property owned by Otto. Otto filed an adversary action

5    against Niles in her bankruptcy alleging Niles misappropriated rents collected from

6    Otto's property. The court ruled that Niles did have a *fiduciary obligation* in

7    connection with the funds she collected and that she was required to deposit those

8    funds into Otto's property management account pursuant to an express or statutory

9    trust under California law. As a result, Niles bore the burden of accounting for

10   those funds with which she had been entrusted.

11        Here, the Arbitrator specifically found the following: (1) as the manager of

12   Riverpark Associates, LLC, Hanson owed the same fiduciary duty to the LLC and to

13   its members as a partner owes to a partnership and to its partners, pursuant to

14   Cal.Corp.Code § 17153; (2) Hanson breached his fiduciary duty, and (3) the

15   Plaintiffs were damaged as set forth in the Judgment. Those are the same issues that

16   the Plaintiffs need to prove to prevail on their § 523(a)(4) claim. Hanson offers no

17   evidence to suggest that those issues were not necessarily and actually litigated in

18   the Arbitration Proceeding. Accordingly, collateral estoppel is appropriate to

19   preclude relitigation of those issues in this adversary proceeding.

20        Under California law partners are trustees over the assets of the partnership

21   within the meaning of § 523(a)(4) and a debt from the debtor to his partner based on

22   the debtor having taken more than his rightful share is not dischargeable. *Ragsdale*

23   *v. Haller*, 780 F.2d 794 (9th Cir. 1986). The Judgment pertaining to both the

24   individual claim of Claborn (the Claborn Judgment) and the derivative claims of the

25   LLC (the LLC Judgment) are, therefore, nondischargeable.

26        **2. Section 523(a)(2)(A) Fraud–Promise Without Intent to Pay.**

27        The Plaintiffs contend that Hanson made promises which he had no intent to

28   honor. The arbitrator specifically found that it was more likely than not that Hanson

did intend to perform the promises he made and this claim was dismissed. The Plaintiffs are collaterally estopped from relitigating this claim here.

### 3. Section 523(a)(6): Willful and Malicious Injury.

The Plaintiffs also contend that Hanson's conduct was "willful and malicious" and ask the court to determine that the Judgment is nondischargeable under § 523(a)(6). A debt is excepted from discharge under § 523(a)(6) where it results from "willful and malicious injury by the debtor to another entity or to the property of another entity." Exceptions to discharge should be strictly construed in favor of the debtor. *County of El Dorado v. Crouch (In re Crouch)*, 199 B.R. 690, 691 (9th Cir. BAP 1996), citing *In re Klapp*, 706 F.2d 998, 999 (9th Cir. 1983). This court is convinced that the LLC Judgment satisfies the § 523(a)(6) elements, while Claborn's Judgment does not.

In 1998, the United States Supreme Court decided *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), resolving a conflict among the circuits about the requirements for a debt to be nondischargeable under § 523(a)(6). A doctor treated his patient's foot injury with oral penicillin, though he knew that intravenous penicillin would have been more effective. He then left on a business trip. While he was absent, other physicians transferred the patient to an infectious disease specialist, which transfer the doctor cancelled upon his returned. He also discontinued all antibiotics. The patient's condition worsened and eventually her leg was amputated below the knee. She received a malpractice judgment against the doctor, who then filed a chapter 7 case and sought a discharge of the judgment.

In the patient's § 523(a)(6) complaint, the bankruptcy court held the debt was nondischargeable; the district court affirmed; but the Eighth Circuit reversed in favor of the debtor. The Circuit held that the exemption from discharge of § 523(a)(6) "is confined to debts based on what the law has for generations called an intentional tort." *Id.* at 59 (citations and internal quotations omitted).

Upon appeal, the Supreme Court phrased the issue as follows: "Does

11

§ 523(a)(6)'s compass cover acts, done intentionally, that cause injury . . ., or only acts done with the actual intent to cause injury (as the Eighth Circuit ruled)?" *Id.* at 61. In affirming the Circuit's decision, the court noted that the word "willful" in § 523(a)(6) modifies the word "injury." In order to be nondischargeable, there must be a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury. The court concluded, "[w]e hold that debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 63.

After the Supreme Court ruling in *Kawaauhau*, lower courts and appellate courts have endeavored to apply it in particular circumstances. The Fifth Circuit Court of Appeals, in *Miller v. J.D. Abrams, Inc. (Matter of Miller)*, 156 F.3d 598 (5th Cir. 1998), held that an employer with a million-dollar judgment against a former employee, who had misappropriated proprietary information from the employer, could not prevail in its § 523(a)(6) complaint after the former employee filed a chapter 7 case. The court said that "willful" cannot mean negligence or recklessness. *Id.* at 603. Either objective substantial certainty of harm, or subjective motive to harm, meets the Supreme Court's definition of "willful . . . injury" in section 523(a)(6). *Id.* at 603.

In a Sixth Circuit Court of Appeals case, *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455 (6th Cir. 1999), a former client obtained a malpractice Judgment for $300,000 against her attorney, Markowitz. Markowitz filed a chapter 7 bankruptcy and the former client filed a complaint to determine the dischargeability of the Judgment. The Sixth Circuit held, "from the Court's language and analysis in *Geiger*, we now hold that unless the actor desires to cause consequences of his act or believes that the consequences are substantially certain to result from it . . . he has not committed a willful and malicious injury as defined under section 523(a)(6)." *Id.* at 464 (citations and internal quotations omitted).

The Ninth Circuit Court of Appeals addressed the issue in *Petralia v. Jercich*

12

1  (*In re Jercich*), 238 F.3d 1202 (9th Cir. 2001).  In that case, an employer deliberately
2  chose not to pay his employee and instead used the "payroll" money for personal
3  investments.  A state court held that the employer's conduct was "willful and
4  oppressive" under California Civil Code § 3294.  *Id.* at 1204.  The bankruptcy court
5  ruled that the employee's claim was dischargeable under § 523(a)(6) and the
6  Bankruptcy Appellate Panel affirmed.  However, the Ninth Circuit reversed, holding
7  that, under § 523(a)(6), it must be shown that the debtor inflicted the injury willfully
8  and maliciously rather than recklessly or negligently.  *Id.* at 1207.  "[U]nder *Geiger*,
9  the willful injury requirement of § 523(a)(6) is met when it is shown either that the
10  debtor had a subjective motive to inflict the injury *or* that the debtor believed that
11  the injury was substantially certain to occur as a result of his conduct."  *Id.* at 1208
12  (emphasis in original).  The state court had found that the employer knew he owed
13  the wages to his employee and that injury was substantially certain if the wages
14  were not paid.  The employer had the money and the ability to pay the employee as
15  required by California law, but he intentionally chose not to pay the wages due.  An
16  act is malicious within the meaning of § 523(a)(6), where it is (1) a wrongful act, (2)
17  done intentionally, (3) which necessarily causes injury, and (4) is done without just
18  cause or excuse.  *Id.* at 1209.
19      The ruling in *In re Jercich* should be read narrowly in light of the court's
20  subsequent decision in *Lockerby v. Sierra*, 535 F.3d 1038 (9th Cir. 2008), where it
21  held that, "an intentional breach of contract cannot give rise to non-dischargeability
22  under § 523(a)(6) unless it is accompanied by conduct that constitutes a tort under
23  state law."  *Id.* at 1040.  In *Lockerby*, an attorney and his client settled a malpractice
24  suit and the attorney decided to breach that agreement by not paying the former
25  client as had been agreed.  The bankruptcy court, affirmed by the district court,
26  decided the debt was nondischargeable under § 523(a)(6) because "Sierra possessed
27  the 'subjective intent of harming Lockerby.'"  *Id.*  The Ninth Circuit reversed that
28  decision in favor of the debtor and held that the debt was not excepted from the

13

debtor's discharge.  Following *Kawaauhau*, the court held that "'[i]ntentional torts generally require that the actor intend 'the consequences of an act,' not simply 'the act itself . . . .'" *Id.* at 1041 (internal citations omitted).  The court went on to explain that the Supreme Court, in *Kawaauhau*, "specifically rejected the notion that a 'knowing breach of contract' could trigger exception from discharge under § 523(a)(6)."

Here, the Arbitrator specifically found, *inter alia*, that (1) Hanson misappropriated partnership property for his own use or for the use of his solely-owned corporation, (2) Hanson was aware of his fiduciary duty to the Plaintiffs, and (3) Hanson's actions were willful and malicious.  Although the Arbitrator did not specifically find in so many words that Hanson "intended to cause injury" to the Plaintiffs, this court can infer that intent based on the totality of the circumstances. *Washington Mutual Bank v. Dubovoy (In re Dubovoy)*, 377 B.R. 705, 710 (Bankr. M.D. Fla. 2006).

Based on the Arbitrator's determination that Hanson acted with malice involving despicable conduct with a willful and conscience disregard of the rights of others, and by the award of punitive damages in favor of the LLC on the derivative claims, this court is persuaded that Hanson's conduct was willful and malicious and done with intent to injure the LLC.[2]  The LLC Judgment is excepted from discharge under §523(a)(6).  However, the Claborn Judgment does not meet the elements of § 523(a)(6).  No punitive damages were awarded to Claborn, nor did the Arbitrator make a determination that Hanson's conduct was willful or malicious in connection with Claborn's Judgment.

---

[2]Under California Civil Code § 3294(a), punitive damages may only be awarded where it is proven by clear and convincing evidence that the defendant has been guilty of "oppression, fraud or malice."  The court can infer from an award of punitive damages that one or all of the elements of § 3294(a) have been proven. See *In re Cantrell*, 329 F.3d at 1125.

14

**Hanson's Defense.**

In defense of this adversary proceeding, Hanson argues again that his 28% interest in the LLC may be offset against the Judgment. In addition, Hanson contends that the attorney fees and arbitration fees incurred in the Arbitration Proceeding should not be excepted from discharge, and that he is entitled to an offset for the advances he made to the LLC. Notably, Hanson does not specifically deny that he committed the acts set forth in the findings and conclusions recited by the Arbitrator. Neither does Hanson contend that there is any triable issue of material fact as to any of the funding in the Arbitration Proceeding.

Hanson raised these arguments in the Arbitration Proceeding and the Arbitrator has already determined that Hanson could not exercise a right of offset. This court is bound by federal law to accept the Arbitrator's findings and conclusions as a final adjudication of Hanson's offset rights. Hanson did not bring a cross-motion or counterclaim in the Arbitration Proceeding or in this adversary proceeding. This court is not being asked to liquidate the Plaintiffs' claims against Hanson. That has already been done in the Judgment. This court is just being asked to determine whether that Judgment should be excepted from discharge. Further, Hanson lacks standing to assert this interest in property which now belongs to his bankruptcy estate and which will be administered by the trustee according to the Bankruptcy Code. S 541(a)(1), *In re Tippett*, 338 B.R. 82, 86 (9th Cir.BAP, 2006). Accordingly, Hanson's request for an offset to the Judgment will be denied.

Finally, Hanson argues that attorneys' fees and costs in the instant proceeding are not recoverable by the Plaintiffs. This issue is governed by *Travelers Cas. and Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S. 443-48-49 (2007), which provides that if those fees and costs are recoverable under state law or pursuant to agreement or contract, then they are recoverable in a bankruptcy proceeding. The Arbitrator found that the Operating Agreement provided for attorneys' fees and costs. Hanson is barred by the doctrine of issue preclusion from

15

1  relitigating that issue.

2  **Conclusion.**

3      Based on the foregoing, the court finds and concludes that Plaintiffs already

4  hold a Judgment for compensatory and punitive damages against Hanson.  That

5  Judgment is final and cannot be appealed or relitigated in this bankruptcy court.

6  However, this court can determine whether the Judgment is nondischargeable under

7  §§ 523(a)(4) and (a)(6).  It appears that the factual issues necessary to establish

8  Plaintiffs' nondischargeability claims have already been fully litigated in the

9  Arbitration Proceeding and are applicable here by the doctrine of collateral estoppel.

10      There are no remaining issues of material fact which can be, or need to be,

11  litigated in this court and Plaintiffs are entitled to judgment in this adversary

12  proceeding as a matter of law.  Accordingly, Plaintiffs' motion for summary

13  judgment will be granted.  Judgment will be entered in favor of Claborn on his

14  claim under § 523(a)(4).  Judgment will be entered in favor of the LLC on its claims

15  under §§ 523(a)(4) and (a)(6).  The Plaintiffs shall submit a proposed judgment

16  consistent with this ruling.

17      Dated: June _25_, 2010

18

19                          W. Richard Lee
                            United States Bankruptcy Judge
20

21

22

23

24

25

26

27

28

16

Wade Alan Hanson and Gail Judith Hanson, Case Number 09-13200
Adv. Proc. No. 09½-1139/DC No. HAR-1

Wade Alan Hanson
Gail Judith Hanson
10217 N. Rowell Ave.
Fresno, CA 93730

Justin D. Harris, Esq.
Attorney at Law
1690 W. Shaw Ave., #200
Fresno, CA 93711

Hilton A. Ryder, Esq.
Attorney at Law
5 River Park Place East
P.O. Box 28912
Fresno, CA 93729-8912

James E. Salven
Chapter 7 Trustee
P.O. Box 25970
Fresno, CA 93729

Robert A. Hawkins, Esq.
Attorney at Law
1849 N. Helm, #110
Fresno, CA 93727

Office of the U.S. Trustee
United States Courthouse
2500 Tulare St., Ste. 1401
Fresno, CA 93721